IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ROOF SERV LLC,

    Plaintiff,

    v.

RUTH & ASSOCIATES BUSINESS
SOLUTIONS LLC, et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:23-CV-4937-TWT

### OPINION AND ORDER

This is an insurance dispute. It is before the Court on the Plaintiff Roof Serv LLC's Motion for Partial Summary Judgment [Doc. 77] and the Defendants Ruth & Associates Business Solutions LLC ("RABS") and Ruth Matsushita's Motion for Summary Judgment [Doc. 125]. For the following reasons, the Plaintiff's Motion for Partial Summary Judgment [Doc. 77] is DENIED as moot, and the Defendants' Motion for Summary Judgment [Doc. 125] is GRANTED.

### I. Background[1]

This action arises out of damages that the Plaintiff Roof Serv LLC allegedly suffered by relying on various certificates of insurance ("COIs")

---

[1] The operative facts on the Motion for Summary Judgment are taken from the parties' Statements of Undisputed Material Facts and the responses thereto. The Court will deem the parties' factual assertions, where supported by evidentiary citations, admitted unless the respondent makes a proper objection under Local Rule 56.1(B).

issued by RABS from December 2021 to July 2023. RABS issued these COIs to a subcontractor of Roof Serv, Spartans Crew Roofing, LLC ("Spartans"), for workers' compensation insurance. (Compl. ¶¶ 14–49). Defendant Matsushita is the owner and managing member of RABS, an insurance brokerage firm. (Defs.' Statement of Material Facts ¶¶ 1–2). Defendant Brigitte Chavarria is a licensed insurance agent who worked for RABS as an independent contractor beginning in June 2020 through sometime in 2023, as demonstrated by an independent contractor agreement between these parties. (*Id.* ¶ 3); (Pl.'s Resp. to Defs.' Statement of Material Facts ¶ 3); [Doc. 85-6 at 2–3].[2]

Roof Serv never had its own contractual relationship with RABS or Matsushita but obtained COIs from Roof Serv's subcontractors to ensure that they carried workers' compensation insurance for their workers. (Defs.' Statement of Material Facts ¶¶ 7-8); (Pl.'s Resp. to Defs.' Statement of Material Facts ¶¶ 7-8). At issue in this case, Spartans served as a subcontractor to Roof Serv. (Defs.' Statement of Material Facts ¶ 9). On December 8, 2021, Matsushita submitted an application for Spartans for an assigned risk worker's compensation policy. (Pl.'s Resp. to Defs.' Statement of

---

[2] The Court overrules Roof Serv's objection to the Moving Defendants' assertion that Chavarria was an independent contractor for RABS because Roof Serv does not point to any evidence in support of its position that Raquel Matsushita was not capable of binding RABS on the agreement, in violation of Local Rule 56.1(B)(2)(a)(2)(i). Additionally, the Court notes that Chavarria does not join the present Motion; the Court entered default judgment against her in April 2024. [Doc. 20].

2

Material Facts ¶ 11); (Dec. 8, 2021 Workers Comp. App., [Doc. 90-3]). The application was accepted by Travelers Property Casualty Company of America ("Travelers") and coverage began with a policy period of December 8, 2021, to December 8, 2022. (Defs.' Statement of Material Facts ¶¶ 12-13). On December 15, 2021, Matsushita issued a COI listing Roof Serv as a certificate holder and identifying the Spartans' workers compensation policy by its binder number ("December 2021 COI"). (*Id.* ¶ 14). The December 2021 COI contains a disclaimer that states:

> This certificate is issued as a matter of information only and confers no rights upon the certificate holder. This certificate does not affirmatively or negatively amend, extend, or alter the coverage afforded by the policies below. This certificate of insurance does not constitute a contract between the issuing insurer(s), authorized representative or producer, and the certificate holder.

(*Id.* ¶ 17). By at least January 2022, Travelers notified Spartans that it was attempting to conduct a premium audit and that failure to comply with the audit would result in the cancellation of its workers' compensation policy. [Doc. 90-4 at 2, 42]. The audit was completed in March or April 2022 with Rachelle Matsushita as a contact, but Travelers still canceled the policy in May 2022. [*Id.* at 10, 38-42]. Travelers then issued a premium refund check to the owner of Spartans, which was cashed. (Defs.' Statement of Material Facts ¶ 20).

In September 2022, Roof Serv asked Spartans for an updated COI and, despite knowing that the Traveler's policy had been cancelled, Spartans

3

resbumitted the December 2021 COI to Roof Serv. (*Id.* ¶ 21). Spartans neither notified Roof Serv of the cancellation nor made any effort to obtain new coverage. (*Id.* ¶ 23). In October 2022, Chavarria submitted a second application on behalf of Spartans for workers compensation insurance, this time identifying Jose Pelcastre, Spartans' owner, as the insured. (*Id.* ¶¶ 25-26). This application was accepted by Liberty Mutual, and the coverage period under the new policy was October 18, 2022, to October 18, 2023. (*Id.* ¶ 28). On January 18, 2023, Chavarria issued a new COI listing Roof Serv as a certificate holder and identifying the Liberty Mutual policy ("January 2023 COI"). (*Id.* ¶ 29); [Doc. 75-5 at 37]. This COI contained the same disclaimer language as the December 2021 COI. (Defs.' Statement of Material Facts ¶ 30). The Liberty Mutual policy was cancelled as of January 12, 2023. [Doc. 76 at 3]. The cancellation notice stated that the policy was cancelled "for not complying with [Liberty Mutual's] requests to complete a preliminary audit." [*Id.*]. Audit records indicate that multiple attempts were made to contact Pelcastre, Chavarria, and Matsushita regarding the need for documents to complete the audit, but the auditor was unable to obtain any response. [*Id.* at 49-52].

Around April of 2023, Roof Serv's own workers compensation carrier was conducting a premium audit when it identified issues with Spartans' coverage. (Defs.' Statement of Material Facts ¶ 33). In July 2023, Roof Serv contacted Matsushita to request updated COIs for Spartans. (*Id.* ¶ 35); (Pl.'s Resp. to

4

Defs.' Statement of Material Facts ¶ 34). She informed Roof Serv that Spartans had "had insurance through the whole year" and that "[i]t had to be a mistake." (Deposition of Tom McConnell, [Doc. 88 at 146:11-23], ("McConnell Dep.")). Revised certificates were issued at that time reflecting the actual effective dates of both the Travelers and Liberty Mutual policies; one was signed by Chavarria and the other by non-defendant Carolina Cano ("the Revised COIs"). [Doc. 75-5 at 21-22]. Roof Serv last used Spartans for a project in October 2023. [McConnell Dep. at 83:14-16].

Roof Serv filed the present action in the State Court of Gwinnett County seeking damages it allegedly incurred as a result of an audit with its own insurance carrier, Auto-Owner's Insurance. (Compl. ¶ 25). Roof Serv alleges that, due to the lapses in Spartans' workers compensation insurance policies, it was forced to pay a total of $2,679,417 in increased premiums under the terms of its own policies for the periods that Spartans allegedly went uninsured. (*Id.* ¶¶ 44-49). The Moving Defendants removed the action to this Court in October 2023. Roof Serv moved for partial summary judgment as to liability on November 1, 2024, and the Moving Defendants moved for summary judgment on February 10, 2025. [Docs. 77, 125]. Both Motions are presently before the Court.

5

## II. Legal Standards

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c). The court should view the evidence and draw any inferences in the light most favorable to the nonmovant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

## III. Discussion

In its Complaint, Roof Serv asserted the following state law claims against both Defendants: negligent misrepresentation (Count I); negligence per se (Count II); promissory estoppel/detrimental reliance (Count III); attorney's fees and costs (Count IV); and exemplary damages (Count V). (Compl. ¶¶ 51-98). The Court will address each claim in turn, as well as Roof Serv's vicarious liability argument regarding Chavarria's alleged conduct.

### A. Vicarious Liability as to Chavarria

The Moving Defendants contend that they are not vicariously liable for any of Chavarria's actions under O.C.G.A. § 51-2-5, for several reasons. (Defs.' Mot. for Summ. J., at 8-9). First, they argue that Roof Serv is not a third-party beneficiary of any contracts between the Moving Defendants and either Pelcastre or Defendant Chavarria and therefore lacks standing to assert any claims arising from contractual arrangements amongst these parties. (*Id.* at 9-10). Second, the Moving Defendants assert that Chavarria's actions did not violate any non-delegable statutory duties imposed on them under O.C.G.A. § 33-24-19.1, such that they cannot be held liable for her actions under O.C.G.A. § 51-2-5(4). (*Id.* at 10). Finally, the Moving Defendants argue that they had no knowledge of any alleged wrongs or omissions of Chavarria and never ratified her actions, precluding liability under O.C.G.A. § 51-2-5(6). (*Id.* at 11-12).

In response, Roof Serv first argues that the Moving Defendants can be vicariously liable for Chavarria's actions under O.C.G.A. § 51-2-5 because (1) she did not have the authority to issue COIs as an independent contractor; (2) O.C.G.A. § 33-24-19.1 imposes a statutory duty on an agent to provide accurate COIs, and Chavarria failed to do so; and (3) RABS retained the right to control the time and manner of Chavarria's work. (Pl.'s Resp. in Opp. to Mot. for Summ. J., at 12-14). Second, Roof Serv contends that the Moving

7

Defendants can be vicariously liable for Chavarria's conduct under the doctrine of apparent authority (*Id.* at 14-18).

O.C.G.A. § 51-2-5 governs the circumstances under which an employer can be liable for the negligence of its contractors. The Court agrees with the Moving Defendants that Roof Serv lacks standing to enforce any alleged violations of the independent contractor agreement between Chavarria and RABS. The Georgia Court of Appeals has limited O.C.G.A. § 51-2-5(3)'s enforceability to parties to an independent contractor agreement. *See Kidd v. Dentsply Intern., Inc.*, 278 Ga. App. 346, 350 (2006) ("[T]he contractual duties under which the employer would be liable for the acts of the independent contractor cannot be enforced by one not a party to the contract." (quotation marks and citation omitted)). Here, there is no question that Roof Serv is not a party to the independent contractor agreement between RABS and Chavarria; thus, regardless of whether that agreement gave Chavarria express permission to issue COIs, Roof Serv may not rely on any alleged breach of that agreement to impute liability to the Moving Defendants under O.C.G.A. § 51-2-5(3).

Under O.C.G.A. § 51-2-5(4), the Court also agrees with the Moving Defendants that O.C.G.A. § 33-24-19.1 does not impose any statutory duties on insurance agents to provide accurate COIs. Roof Serv also does not point to any part of the statute that would impose such a duty. In fact, contrary to Roof

8

Serv's arguments, the words "reasonable care" do not appear anywhere in the statute. At most, the statute prohibits any person—not just insurance agents—from *knowingly* preparing or issuing COIs with false or misleading statements. *See* O.C.G.A. § 33-24-19.1(g). But there are no allegations in the Complaint that Chavarria knowingly issued a misleading COI here. Therefore, there is no statutory basis under O.C.G.A. § 33-24-19.1 for imputing liability for Chavarria's actions to the Moving Defendants pursuant to O.C.G.A. § 51-2-5(4).

As to O.C.G.A. § 51-2-5(5), Roof Serv has not pointed to any facts in the record substantiating its argument that "every person employed by [RABS] got the exact same treatment" such that the Moving Defendants controlled the manner and method of Chavarria's work. (Pl.'s Resp. in Opp. to Mot. for Summ. J., at 14). Although Roof Serv cites snippets of deposition testimony that brush on this issue in its arguments that Chavarria was an employee of RABS rather than an independent contractor, Roof Serv did not submit its own statement of material facts in responding to the Moving Defendants' Motion for Summary Judgment. Therefore, these citations may not be considered in support of Roof Serv's position. LR 56.1(B)(1), (B)(2)(b) (noting that a respondent shall provide the Court with "a statement of additional facts which the respondent contends are material and present a genuine issue for trial," and that the Court will not consider any fact "set out only in the brief and not in the [respondent's]

9

statement of undisputed facts."). Thus, O.C.G.A. § 51-2-5(5) also fails to provide a basis to impute liability to the Moving Defendants.

Next, Roof Serv did not respond to the Moving Defendants arguments under O.C.G.A. § 51-2-5(6). (*See generally* Pl.'s Resp. in Opp. to Defs.' Mot. for Summ. J.). Nonetheless, the Court agrees with the Moving Defendants that there is no evidence supporting an argument that the Moving Defendants ratified any alleged wrongdoing of Chavarria. Instead, viewing the evidence in the light most favorable to Roof Serv, once Roof Serv made Matsushita aware of the lapse in Spartans' workers compensation coverage, revised certificates were issued that accurately reflected the actual effective dates of both the Travelers and Liberty Mutual policies. (Defs.' Statement of Material Facts ¶¶ 32, 34); (Pl.'s Resp. to Defs.' Statement of Material Facts ¶ 34); (McConnell Dep. at 146:11-23); [Doc. 75-5 at 21-22].

Roof Serv's arguments under the doctrine of apparent authority also lack merit. To demonstrate an apparent agent and principal relationship, a plaintiff must show that: "(1) the apparent principal represented or held out the apparent agent; and (2) justifiable reliance upon the representation led to the injury." *Fortune v. Principal Fin. Grp.*, Inc., 219 Ga. App. 367, 370 (1995). The plaintiff's belief that there is an agency relationship is not sufficient; "[t]he apparent principal must represent or hold out the apparent agent." *Id.* In other words, "the statements or conduct of *the alleged principal* [must] reasonably

10

cause the third person to believe that the principal consents to have the act done on his behalf by the purported agent." *Hinely v. Barrow*, 169 Ga. App. 529, 530 (1984) (citations omitted).

The first problem for Roof Serv is that the bulk of its arguments as to this issue again rely on citations in its brief to evidence that was not provided in a statement of material facts. *See* LR 56.1(B)(1), (B)(2)(b), NDGa.3 That leaves Roof Serv with its exhibits: screenshots of customer Google reviews for RABS that mention Chavarria, a screenshot of Matsushita's Facebook profile displaying a picture of Chavarria, and a screenshot of Chavarria's LinkedIn profile. (*See* Pl.'s Resp. in Opp. to Def.'s Mot. for Summ. J., Ex. C, D [Docs. 136-3, 136-4]). The first and third of these exhibits fail to support an apparent agency theory because they are not statements made by the Moving Defendants themselves. *See Hinely*, 169 Ga. App. at 530. As to Matsushita's Facebook post, there are no allegations or citations to record evidence that Roof Serv relied on this alleged representation of Chavarria as an agent of the Moving Defendants in doing business with them. *Fortune*, 219 Ga. App. at 370 (noting that the plaintiff must demonstrate that "justifiable reliance *upon the representation* led to the injury." (emphasis added)). Thus, even construing the admissible facts in the light most favorable to Roof Serv, there is no basis for vicarious liability as to the Moving Defendants under the doctrine of apparent

---

3 This includes Roof Serv's brief citations to subpoena responses and depositions.

11

authority.

Finally, Roof Serv presents a curious argument that the Moving Defendants must be vicariously liable for Chavarria's alleged negligence because they have not produced any evidence that she issued the January 2023 COI, and therefore it remains a jury question whether she did so. Setting aside that Chavarria having issued the January 2023 is a necessary linchpin for Roof Serv's vicarious liability's arguments, Roof Serv admitted in its response to the Moving Defendants statement of material facts that Chavarria herself issued the January 2023 COI. (Pl.'s Resp. in Opp. to Defs.' Statement of Material Facts ¶ 28). That fact is deemed admitted and not in dispute. *See* LR 56.1(B)(2)(a)(2), NDGa. For all of these reasons, there is no genuine dispute of material fact that the Moving Defendants are not vicariously liable for any alleged negligence of Defendant Chavarria.

### B. Negligent Misrepresentation

The Moving Defendants next argue that Roof Serv's negligent misrepresentation claim fails because Roof Serv has not presented any evidence that the information contained in the December 2021 COI or the Revised COIs was incorrect. (Def.'s Mot. for Summ. J., at 13-15). As to the January 2023 COI, the Moving Defendants assert that although the January 2023 COI contained incorrect effective dates for the workers compensation policy, Roof Serv's claim still fails because Chavarria issued the COI, and they

are not vicariously liable for Chavarria's actions. (*Id.* at 14-15). Additionally, the Moving Defendants contend that Roof Serv could not reasonably rely on the COIs under Georgia law due to the COI's lack of binding effect and their comprehensive disclaimer. (*Id.* at 15-18).

Roof Serv summarily argues that it was justified in relying on the information contained in the COIs because COIs exist to confirm the validity of a policy, and the COIs at issue here were issued pursuant to a statutory duty of reasonable care. (Pl.'s Resp. in Opp. to Mot. for Summ. J., at 19-22). It also asserts that it exercised due diligence to uncover the Moving Defendants' misrepresentations by routinely requesting COIs to verify that Spartans had active workers compensation insurance. (*Id.* at 22-24).

To state a claim for negligent misrepresentation under Georgia law, a plaintiff must plead the following elements: "(1) the defendant's negligent supply of false information to foreseeable persons, known or unknown; (2) such persons' reasonable reliance upon that false information; and (3) economic injury proximately resulting from such reliance." *Hardaway Co. v. Parsons, Brinckerhoff, Quade & Douglas, Inc.*, 267 Ga. 424, 426 (1997).

As an initial matter, the Court has already determined that O.C.G.A. § 33-24-19.1 does not impose a duty of care upon insurance agents issuing COIs. Regardless, the Moving Defendants are correct that there is no record evidence that the December 2021 COI contained false information when it was

13

issued. Instead, the December 2021 COI accurately reflected the Traveler's policy's effective dates from December 2021 to December 2022. (Defs.' Statement of Material Facts ¶¶ 12-14). Although that policy was later cancelled in May 2022, it was Spartans—not the either of the Moving Defendants—who sent the December 2021 COI to Roof Serv in September 2022, knowing that the policy had been cancelled by that time. (*Id.* ¶ 21-22). Thus, any reliance Roof Serv may have had on the December 2021 COI was owed entirely to Spartans' misrepresentation, not the Moving Defendants.

The evidence does demonstrate that the January 2023 COI misrepresented the effective dates of Spartans' Liberty Mutual policy. The January 2023 COI was issued on January 17, 2023 and reflected a policy period of October 18, 2022 to October 18, 2023. (*Id.* ¶ 28). In reality, the policy was cancelled as of January 12, 2023. [Doc. 76 at 3]. Nonetheless, the Court has already determined that there is no genuine dispute that Chavarria was an independent contractor of the Moving Defendants, the Moving Defendants cannot be held vicariously liable for her actions, and Chavarria herself issued the January 2023 COI. (Pl.'s Resp. in Opp. to Defs.' Statement of Material Facts ¶ 28). The January 2023 COI is also signed by Chavarria. [Doc. 75-5 at 36]. Therefore, although Roof Serv may have been able to make out a negligent misrepresentation claim against Chavarria herself, its claim against the Moving Defendants fails as a matter of law. The Court will thus grant the

14

Moving Defendants' Motion for Summary Judgment as to Roof Serv's negligent misrepresentation claim.

### C. Negligence Per Se

Next, the Moving Defendants argue that Roof Serv's negligence per se claim fails because O.C.G.A. § 33-24-19.1 does not authorize a cause of action by private individuals against their insurance agents. (Defs.' Mot. for Summ. J., at 20-22). Roof Serv did not respond to the Moving Defendants arguments as to this claim. (*See generally* Pl.'s Resp. in Opp. to Mot. for Summ. J.).

A negligence per se claim "arises when a statute or ordinance is violated." *Hubbard v. Dep't of Transp.*, 256 Ga. App. 342, 349 (2002) (citation omitted). O.C.G.A. § 51-1-6 provides

> When the law requires a person to perform an act for the benefit of another or to refrain from doing an act which may injure another, although no cause of action is given in express terms, the injured party may recover for the breach of such legal duty if he suffers damage thereby.

This statute authorizes a plaintiff to recover for the breach of a legal duty "even when that duty arises from a statute that does not provide a private cause of action." *Pulte Home v. Simerly*, 322 Ga. App. 699, 705 (2013) (quotation marks and citation omitted).

Here, Roof Serv's negligence per se claim against the Moving Defendants fails as a matter of law. Although the Moving Defendants' argument that O.C.G.A. § 33-24-19.1 does not provide a private cause of action

15

misses the mark, the relevant consideration is that § 33-24-19.1 does not impose any statutory duty of reasonable care or accuracy in issuing COIs on insurance agents or agencies. If it did, O.C.G.A. § 51-1-6 would permit Roof Serv to pursue recover for the breach of that statutory duty under a negligence per se theory of relief. But without a statutory violation, there can be no claim for negligence per se. *Hubbard*, 256 Ga. App. at 349. Accordingly, the Court will grant the Moving Defendants' Motion for Summary Judgment as to Roof Serv's negligence per se claim as well.

### D. Promissory Estoppel/Detrimental Reliance

Next, the Moving Defendants argue that they did not make any promises on which Roof Serv could have reasonably relied. (Defs.' Mot. for Summ. J., at 22). They assert that the issuance of the COIs themselves does not constitute the making of a promise under Georgia law because the information contained in the certificates did not "manifest[] an intent to act or refrain from acting" and were instead representations of fact. (*Id.* at 23). Further, the Moving Defendants contend, even if the COIs could be construed as promises, they were not sufficiently definite, and Roof Serv cannot demonstrate reasonable reliance on the COIs. (*Id.* at 23-24). Roof Serv did not respond to the Moving Defendants arguments as to this claim. (*See generally* Pl.'s Resp. in Opp. to Mot. for Summ. J.).

Under Georgia law, a claim of promissory estoppel requires a plaintiff to demonstrate that:

> (1) the defendant made a promise or promises; (2) the defendant should have reasonably expected the plaintiffs to rely on such promise; (3) the plaintiffs relied on such promise to their detriment; and (4) an injustice can only be avoided by the enforcement of the promise, because as a result of the reliance, plaintiffs changed their position to their detriment by surrendering, forgoing, or rendering a valuable right.

*Reynolds v. CB&T*, 342 Ga. App. 866, 872 (2017) (quotation marks and citation omitted); O.C.G.A. § 13-3-44(a). "A promise is a manifestation of an intention to act or refrain from acting in a specified way." *F & W Agriservices, Inc. v. UAP/Ga. Ag. Chem., Inc.*, 250 Ga. App. 238, 241 (2001) (quotation marks and citation omitted). Although the promise at issue "need not meet the formal requirements of a contract," it must "have been communicated with sufficient particularity to enforce the commitment" and cannot be "vague [or] indefinite." *Reynolds*, 342 Ga. App. at 872 (quotation omitted). Above all else, "promissory estoppel requires reliance on a promise, rather than a representation of fact." *Am. Casual Dining, L.P. v. Moe's Southwest Grill, L.L.C.*, 426 F. Supp. 2d 1356, 1372 (N.D. Ga. 2006).

Having reviewed Roof Serv's allegations as to this claim, the Court finds that the COIs at issue did not constitute "promises" as that term is defined under Georgia law, such that any alleged detrimental reliance on their issuance and the information contained therein could give rise to a promissory

17

estoppel claim. (*See* Compl. ¶¶ 90-92 (stating that the Defendants "issued [COIs] that provide[] information . . . that [they] declared was factual, which Plaintiff relied upon to be authentic and true . . . . But for the assurances and promises of Defendants, Plaintiff never would have continued to work with . . . Spartans.")). First, nothing in the COIs constituted "a manifestation of an intention to act or refrain from acting in a specified way." *See F & W Agriservices, Inc.*, 250 Ga. App. at 241. Instead, a COI simply summarizes and certifies the effective dates and other bits of information about the relevant insurance policy identified on the certificate. This conclusion is buttressed by other explanations of the requirements for a promissory estoppel claim relating the promise to a contract, in so much as it must contain a sufficiently definite "commitment." *See, e.g.*, *Reynolds*, 342 Ga. App. at 872. Framed in that light, there is no question that the COIs at issue make no mention of a commitment with regard to the information contained therein. In fact, the disclaimers on the COIs state that the COIs are issued "as a matter of information only" and "do[] not constitute a contract." (Defs.' Statement of Material Facts ¶ 17); [Doc. 75-5 at 36-37]. But a promissory estoppel claim cannot hinge on reliance on "representation[s] of fact." *Am. Casual Dining, L.P., L.L.C.*, 426 F. Supp. 2d at 1372 (citation omitted). Therefore, viewing the facts and allegations in the Complaint in the light most favorable to Roof Serv, there is no genuine dispute that its promissory estoppel claim fails as a matter of law. Accordingly, the

Court will also grant the Moving Defendants' Motion for Summary Judgment on this claim.

### E. Attorney's Fees and Exemplary Damages

Because the Court has found summary judgment to be warranted in the Moving Defendants' favor, and there are no substantive claims remaining, Roof Serv's claims for attorney's fees and damages necessarily fail. *Oconee Fed. Sav. and Loan Ass'n v. Brown*, 351 Ga. App. 561, 576 (2019) ("Because we have found that all of the [plaintiffs'] substantive claims are subject to summary judgment, their derivative claims for attorney fees and punitive damages likewise fail." (citations omitted)). And because the Court is granting summary judgment in the Moving Defendants' favor on all counts, Roof Serv's Motion for Partial Summary Judgment [Doc. 77] will be denied as moot.

### IV. Conclusion

For the foregoing reasons, the Plaintiff Roof Serv LLC's Motion for Partial Summary Judgment [Doc. 77] is DENIED as moot and the Defendants Ruth & Associates Business Solutions LLC and Ruth Matsushita's Motion for Summary Judgment [Doc. 125] is GRANTED.

SO ORDERED, this  29th  day of May, 2025.

THOMAS W. THRASH, JR.<br>
United States District Judge